## STATE v. NELSON.

No. 2179.   Decided June 3, 1911 (117 Pac. 71).

1. LARCENY—EVIDENCE—SUFFICIENCY.   Evidence *held* insufficient to sustain a conviction of grand larceny.   (Page 239.)

2. CRIMINAL LAW—EVIDENCE—DEMONSTRATIVE EVIDENCE.   In a prosecution for the larceny of wheat, samples of wheat received by a witness for the state from the sons of the prosecuting witness, as taken from the granary and shed where the larceny was committed, was incompetent as evidence, in the absence of evidence that the sample was in fact taken from the wheat stored on the premises of the prosecuting witness.   (Page 244.)

APPEAL from District Court, First District; *Hon. W. W. Maughan,* Judge.

*John W. Nelson* was convicted of grand larceny and appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

*George Q. Rich* for appellant.

*A. R. Barnes,* Attorney-General, for the State.

McCARTY, J.

The defendant was informed against in the district court of Cache County, Utah, for the crime of grand larceny. It is charged in the information that the defendant stole thirty bags of wheat containing in all sixty-two bushels of the value of $55.95, the property of one J. E. Godfrey. A trial was had, and the defendant convicted of grand larceny as charged in the information. From the judgment rendered on the verdict, the defendant has appealed to this court.

The evidence such as it is upon which the defendant was convicted was entirely circumstantial. The principal ground upon which the defendant seeks a reversal and the only one we deem it necessary to consider is that the evidence was wholly insufficient to support a verdict of guilty. At the time of the alleged larceny and for several years prior thereto, J. E. Godfrey, the complaining witness, resided at Clarkston, and the defendant resided at Newton, Cache County. The farm at which the larceny was committed was inclosed by a fence, and is situated about three miles south of Clarkston and about two and one half miles north of Newton. No one lived upon this farm, and the only building thereon was a granary and shed. There is a highway running along the north side and another along the west side of these premises, and the granary is back a few rods from either highway. In the fall of 1909, J. E. Godfrey, the owner of the farm, harvested and threshed thereon about 2500 bushels of wheat. The wheat was sacked and stored in the granary and shed mentioned. Each sack contained a little in excess of two bushels. The evidence tended to show that on the night of November 4, 1909, some person with an empty three and one fourth farm wagon drawn by a team of horses came from the town of Newton to the farm, drove in at a gate on the west side of the premises, loaded onto the wagon about thirty sacks of Godfrey's wheat, and then returned with the outfit to Newton. The tracks made by the team and wagon were traced within one block of defendant's residence but no nearer. The tracks made by the horses showed that both animals were shod, with the exception of

the left front foot of the off horse; that is, the off horse carried three shoes only. No tracks of a wagon, empty or loaded, were traced from the Godfrey farm to the defendant's premises; nor was it shown that the defendant was ever seen in the vicinity of the premises where the larceny was committed. On November 5, 1909, at about nine o'clock a. m., the defendant sold and delivered to the Thatcher Milling & Elevator Company, at Logan, Utah, a load of wheat for $55.95. Regarding this transaction, Lee Thatcher, a witness for the state, testified in part as follows: "He (defendant) came in and asked the price of wheat. I told him our price, and he went out considering it, and shortly came up with a load of wheat. He sold the wheat to us. I received it. There was nothing unusual about the defendant that attracted my attention or made me in any way suspicious. He was a regular customer of our mill." The defendant unloaded the wheat at the mill, received his money therefor, and returned with his outfit to a public feed yard, where he stopped and put up his team when he arrived in Logan with his load of wheat. Defendant owned and cultivated a small farm near Newton, and during the summer of 1909 raised thereon about one hundred and sixty-five bushels of wheat, which was threshed in the fall at his home in the town of Newton.

· The evidence introduced by defendant tended to show that a small portion of the 165 bushels of wheat was fed to his horses; that he sold thirty-four bushels at Cache Junction to a man by the name of Griffith; that on November 4, 1909, the defendant, aided by his wife and a son, fifteen years of age, sacked and loaded into his wagon sixty-two bushels of wheat—the wheat which he is charged with having stolen—and on the evening of that same day started with the load of wheat for Logan; that he went to Logan by way of Benson Ward, stopped all night at the latter place at the ranch of his brother, Edward Nelson; that his object in going by the ranch, which was not out of his way in going to Logan, was to lead back and return to the ranch two of his horses which had gotten out of a pasture at the ranch and gone to Newton that morning, and, further, that the roads were muddy and

heavy, and he desired to divide the drive to Logan by stopping over night at the ranch; that he followed the main traveled road leading from Newton to Benson Ward and arrived at the ranch after dark, it requiring about two and one-half hours to make the trip, that on arriving at the ranch he stopped, left his wagon standing in the roadway, turned the horses he was leading into the pasture, put his team into the barn, and went into the house, where he remained over night; that he arose about five o'clock the next morning and proceeded to Logan, where he arrived and put up his team at the public tie yard about seven or eight o'clock.

The state sought to connect the defendant with the crime by showing (1) that his team and wagon corresponded in size to the team and wagon with which the stolen wheat was hauled from the Godfrey farm, as indicated by the tracks made by the latter outfit; (2) that the left front foot of the defendant's off horse was unshod and to that extent corresponded with the off horse of the team used by the party who committed the larceny; (3) that the load of wheat taken to Logan by defendant was of the same kind and class as the wheat that was stolen, and different from the wheat that defendant raised on his farm near Newton, from which he claims the load he sold to Thatcher Milling & Elevator Company was made up. The evidence on these points standing alone, or when considered in connection with the other facts and circumstances of the case, wholly fails to connect the defendant with the larceny of the wheat.

Ezra Eames, who at the time, was a policeman of Logan City, received information on November 5, 1909, that the wheat had been stolen, and he immediately went to the feed yard and examined defendant's outfit. Mr. Eames was called as a witness by the state and testified in part as follows: "I examined the team quite closely and went around them the best I could. No one else was present the first time I examined them. I raised up the feet, and I looked for the ones that had shoes on. The off horse I think *had its front shoe off, and I think it had its hind shoe off;* that is the best I re-

39 Utah—16

member. . . . The next time we examined the horses the marshal took up their feet, and I believe I says, 'Oh, that horse has *some shoes off.'* " And on cross-examination he said: "My best recollection is that one of the horses had *two shoes off,* one off the front foot and one off the hind foot."

N. W. Crookston, sheriff of Cache County, another witness for the state, testified that he saw the defendant "that night (November 5th) at Logan;" that he examined defendant's outfit at the feed yard; and that (quoting) "there was a horse shoe in the jockey box that would fit the horses. I observed the defendant's horses. The way they stood in the stable the off horse's front shoe was off the left foot. The shoe in the jockey box was rusty."

It will thus be observed that according to the evidence introduced by the state one horse of the team that hauled away the grain stolen from the Godfrey farm had but one bare foot; whereas, one of the defendant's horses had two bare feet. True the sheriff testified that when he examined defendant's horses at the feed yard "the way they stood in the stable the off horse's front shoe was off the left foot." But this testimony is not necessarily in conflict with that given by the witness Eames on the same point. It will be noticed that the sheriff did not say that the horse may not have had two bare feet, as testified to by Eames.

It might be well to observe at this time that the state introduced evidence tending to show that the defendant arrived in Logan with the wheat in question on the evening of November 4, 1909. Robert Crookston, an employee at a feed stable adjoining the feed yard where defendant kept his outfit while in Logan, testified that he passed by the feed yard at seven o'clock on the morning of November 5, 1909, and that he observed defendant's team in one of the stalls; that the horses had eaten most of the hay given them, and "had worked" some of it "behind them." "Q. Did you observe their condition with reference to whether or not they had been recently driven—as to sweat? A. Well, the sweat was dry. I think they had been there all night." Two of J. E. Godfrey's sons, witnesses for the state, testified that on

November 4, 1909, at about seven o'clock in the morning, they left Clarkston with a team and buggy and drove to Logan, and in the afternoon of the same day returned to Carkston; that they left Logan about four o'clock p. m., passed through Benson Ward "about dusk," and arrived at Newton about 7:30 o'clock; that they did not see the defendant anywhere on the road between Logan and Newton. This evidence and that given by Robert Crookston was evidently introduced for the purpose of impeaching the testimony given by defendant to the effect that he arrived in Logan on the morning of November 5th. Counsel for the state seem to attach considerable importance to the testimony given by the state's witnesses on this point. If, as counsel for the state seem to contend, this testimony shows that defendant arrived in Logan on the evening of November 4, 1909, it establishes a complete alibi for the defendant and proves conclusively that he did not commit the crime of which he stands convicted, because the record shows that the crime was evidently committed on the night of November 4th, and of course if the defendant was in Logan (which is eighteen or twenty miles from the place where the larceny was committed) that night he did not commit it.

The evidence, without conflict, also shows that the defendant, as we have hereinbefore stated, threshed one hundred and sixty-five bushels of his own wheat on his premises in the town of Newton. He fed a small portion of this wheat to his horses, sold thirty-four bushels at Cache Junction to a man by the name of Griffith, and at the time he was arrested had about sixty bushels of the wheat in his granary, which, together with the sixty-two bushels that he sold to the milling company in Logan, accounted for the wheat threshed.

In view of the complete failure of the evidence to in any manner connect the defendant with the commission of the crime charged, any inference that might legally be drawn from the comparison of certain samples of wheat which were introduced in evidence by the state as tending to show that the wheat sold by defendant on the occasion in question was of the same kind and class as the wheat stolen and different

from the wheat raised by defendant would be wholly inadequate to support a judgment of conviction. Furthermore, it was not shown that either of the samples **2** mentioned was taken from the wheat stored in the granary and shed on the Godfrey farm at the time the larceny was committed. The sheriff testified that he received "from the Godfrey boys" the sample of wheat introduced in evidence as wheat taken from that stored in the granary and shed on the Godfrey farm at the time the larceny was committed, but there is no evidence in the record tending to show where the "Godfrey boys" obtained the wheat. Therefore that particular sample of wheat was incompetent as evidence for any purpose and should have been excluded until it was shown, if such was the fact, that it was taken from the wheat stored on the Godfrey premises at the time of the larceny.

It was shown at the trial that the defendant had before, on several occasions, been in serious difficulty and may have been regarded by some people as an "undesirable citizen." This, together with the fact that much evidence was introduced by the state to prove matters which in their nature were collateral to the main issue, no doubt, to some extent, tended to divert the attention of the jury from the real question before them, namely, the question of whether or not the defendant was proved guilty, beyond a reasonable doubt, of the particular crime charged in the information. Upon no other theory can we account for the verdict of the jury in this case.

Judgment reversed, and cause remanded for a new trial.

FRICK, C. J., and STRAUP, J., concur.